Hogaboam, Appellant, vs. Metropolitan Life Insurance Company, Respondent.

*December 4, 1945—January 8, 1946.*

For the appellant there was a brief by *Hale, Skemp & Nietsch* of La Crosse, and oral argument by *Quincy H. Hale.* *Hubert V. Fuller* of La Crosse, for the respondent.

MARTIN, J. John R. Sink, the named insured, was born April 2, 1909. The insurance policy was issued April 1, 1928, and provided for the payment to his named beneficiary or next of kin of the sum of $1,000 upon proof of his death. At first he named his parents as the beneficiaries. After his marriage in 1932 he changed the beneficiary to his wife, plaintiff in this action. Premiums were paid until January 1, 1938.

Mr. Sink was a high-school graduate. On July 23, 1932, he married plaintiff. One child was born of this marriage, a daughter Nancy, on April 24, 1933. After graduating from high school, and during his entire married life, Mr. Sink was employed by the Northern States Power Company in the city of La Crosse. He purchased a home, made a down payment of $500, and was paying the balance at the rate of $32 per month.

His married life was a happy one. He and his wife attended the same church, engaged in the same sports, spent a great deal of time with their mutual friends. Mr. Sink's habits were regular and he had established a routine in which he would go to his work and come home at about the same time each day. He was sober and industrious. His record in his employment was that of diligence and above the average as an employee. His superiors characterized him as a good worker. He had a reputation of being able to get along with everybody. He had no known enemies. He was not easily disturbed. His health was good, and the health of his wife and child were good. His mother had died prior to his marriage in 1932, and his father died a year after his marriage. He had one sister living in 1938.

On September 9, 1937, Mr. Sink had a day off from his employment. He and his father-in-law went fishing. Nothing

unusual happened during the day. When he returned home his wife noticed nothing unusual, and he seemed to be in good humor. He and his wife had supper together that evening. After they had supper his wife discussed with him a letter that came to him during the day relative to a loan that he had with the Citizens Loan & Finance Company. The letter was to the effect that he was back a month on payment of instalments. When the matter was discussed with his wife, he seemed upset about it. The matter caused no family disturbance, and he and his wife figured out the family budget so that payments on this account could be made at the rate of $5 instead of $10 per month. His indebtedness to the Citizens Loan & Finance Company was $80.

After they had supper Mr. Sink left his home with the family car to go to his mother-in-law's home, which was a few blocks away, to get their daughter Nancy. He asked his wife if she would go along. She stated that she would stay at home and finish the work. Mr. Sink left home about 8:15. When he had not returned by 8:30, his wife thought it unusual, called her mother's home, and found that her husband had not arrived there. Later the wife contacted Mr. Sink's sister to inquire if she knew of his whereabouts. When he had not returned by 11 o'clock, his wife went to the police station and contacted his friends to try and learn of his whereabouts. About 3 o'clock the following morning the matter was reported to the police station. When he left his home he had a small amount of money and had made no preparation for a long absence.

Three days later Mr. Sink's automobile was found parked a short distance from the police station. From that time on, the wife made a diligent search. She notified the Insurance Company and they investigated and found no trace of him. She did not want to get out a warrant for the arrest of her husband but did so at the request of the police officers. They told her they would require a warrant to make a diligent

search such as she requested. Their search was fruitless, although it extended over a wide area. Later Mrs. Sink attempted to learn of her husband's whereabouts through his social-security number and through the registration of the United States war department, which included service in both the army and navy. The war department certified on April 16, 1945, that it had no record of his being in the service. No communication has been received from him nor is there any evidence of his having been seen by any of his next of kin or friends. He had never been sued or threatened with suit for any of his debts. He had never been in trouble with the police, nor been charged with any criminal offense.

After his disappearance it was discovered that Mr. Sink had signed, without their consent, his wife's and his father-in-law's names on his note with the Citizens Loan & Finance Company. The father-in-law had signed a note some three or four years previously for either $150 or $200, which Mr. Sink had paid. The only other indebtedness he had was a loan with the National Bank of La Crosse evidenced by a promissory note. This loan was made in June of 1937, and on September 9, 1937, there was a balance of $118.37 due. In making this loan, and without their consent, he signed the names of his wife and two comakers who were coemployees at the Northern States Power Company.

At the age of sixteen, while in high school, Mr. Sink had gone from his home for three or four days without his parents' consent. At that time his father sent one of his employees to search the Mississippi river bottom, thinking he had gone fishing and had possibly drowned. After three or four days he returned home. In 1932, at the age of twenty-three, and shortly after his mother's death, he went to Chicago for a week without telling his father where he was going.

After the Insurance Company was notified of his disappearance, and, no premiums having been paid after January 1, 1938, the Insurance Company computed the paid-up insurance under the policy at $184 and notified Mrs. Sink to that effect.

At the time of his disappearance Mr. Sink was employed as a fireman at the Northern States Power Company and was in line for promotion to engineer.

The crucial question is whether there is any credible evidence to support the jury's finding that Mr. Sink died prior to January 1, 1938. The court did not disturb the jury's answer to the first question of the special verdict, that is, the finding that Mr. Sink was dead. The respondent takes no issue with that question.

Unless the facts and circumstances shown in any particular case are such as to warrant a reasonable inference that death took place at some particular time within the seven years, death is not presumed before the end of the period. *White v. Brotherhood of Locomotive Firemen,* 165 Wis. 418, 162 N. W. 441; *Dobelin v. Ladies of the Maccabees of the World,* 171 Wis. 54, 57, 174 N. W. 897. "The rule is well established in Wisconsin that while there is a presumption of death from the fact of an absence of seven years unexplained, there is no presumption as to when during the seven-year period the subject of inquiry actually died." *Kietzmann v. Northwestern Mut. Life Ins. Co.* 245 Wis. 165, 168, 13 N. W. (2d) 536.

In *Delaney v. Metropolitan Life Ins. Co.* 216 Wis. 265, 257 N. W. 140, the trial court found that Delaney died on the date of his disappearance. Judgment was for the plaintiff and on appeal was affirmed by this court. In *White v. Brotherhood of Locomotive Firemen, supra,* it was found that White died shortly after his disappearance. At page 422 the court said:

"The well-settled rule is that there is no presumption of death until the expiration of seven years after being heard from, and after seven years there is no presumption of either life or death at any particular time during the seven years *in the absence of evidence raising such presumption.*" Citing cases.

Plaintiff had the burden of proof to establish the fact that Mr. Sink died prior to January 1, 1938. There being no pre-

sumption that he died prior to said date, plaintiff was required to establish the fact by a fair preponderance of the evidence to a reasonable certainty. The facts in the *Delaney Case, supra,* and in the *White Case, supra,* are distinguishable from the facts in the instant case. The factual features of the instant case are more like those in *Kietzmann v. Northwestern Mut. Life Ins. Co., supra,* although the reasons for the disappearance in the latter case are somewhat stronger than in the instant case. Sink had disappeared from his parents' home while a student in high school for three or four days without the consent of his parents or informing them where he was going. On another occasion, in February, 1932, he went to Chicago and was away for a week without informing his father of his going.

It appears that on the evening of his disappearance, when his wife informed him of the letter received from the Citizens Loan & Finance Company calling his attention to the fact that he was back a month on payment of instalments it appeared to disturb him. No doubt he feared disclosure of the fact that he had forged the signatures of his wife and his father-in-law on his note then held by the Citizens Loan & Finance Company; also, the probability that his wife and his two coemployees at the Northern States Power Company would learn of his forging their names on the note at the National Bank of La Crosse. While the amounts of the notes were not large, he may have feared a criminal prosecution for having forged their names.

A careful consideration of all the evidence convinces us that there is no credible evidence to sustain the jury's answer to the second question of the special verdict, and that the court properly changed the answer to that question from "Yes" to "No." However, it does not follow that the action should have been dismissed. Plaintiff's action was on the policy to recover the face amount of the policy, and for such other sums as may have accrued to the plaintiff either as the named bene-

ficiary or as administratrix of the estate of her former husband. It is conceded that after payment of premiums had stopped, the Insurance Company, under an optional provision of the policy, had converted the coverage to paid-up insurance in the sum of $184. The jury having found that the insured was dead, the plaintiff was entitled to the proceeds of the paid-up policy in the sum of $184, plus interest and costs.

*By the Court.*—Judgment reversed. Cause remanded with directions to enter judgment in favor of the plaintiff against the defendant for the sum of $184, plus accrued interest, and for the costs and disbursements.